UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEE RUSSELL,

    Plaintiff,

vs.                                    Case No.: 8:14-cv-814-T-17AEP

CITY OF TAMPA,

    Defendant.
_____/

## ORDER ON DEFENDANT CITY OF TAMPA'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant City of Tampa's ("City") Motion for Summary Judgment (Doc. 20) and pro se Plaintiff Dee Russell's ("Russell") Response in Opposition (Doc. 24). Also before the Court is City's Motion to Strike Affidavits of Undisclosed Witnesses Used in Support of Russell's Response to City's Motion for Summary Judgment. (Doc. 32). For the purposes of this motion only, the Court will consider the affidavits in question. For the reasons that follow, City's Motion for Summary Judgment is **GRANTED**.

### Background

Russell began working for City in June 2002. (Doc. 29 ¶ 2). He was hired as an Automated Collection Driver tasked with driving large trucks and collecting solid waste on assigned routes. (Doc. 20-1 at 6). When he first began working for City, Russell primarily drove a type of truck known as a "LODAL." On June 21, 2012, while driving one of these trucks on his route, Russell was involved in a potentially fatal accident with a motorcyclist. (Doc. 29 ¶ 3). The accident left Russell

1

emotionally disturbed and ridden with guilt. (Doc. 29 ¶ 6). Some time after the accident, City introduced a new model of truck, the Mack truck. These Mack trucks handled differently than the previous LODAL trucks and produced a different type of movement which Russell alleges reminds him of the accident, causing him to experience flashbacks. (Doc. 20-1 at 10). Russell requested to be assigned to the LODAL trucks and not the new Mack trucks. (Doc. 24 at 2). Suffering from severe emotional distress, Russell was referred to City's Employee Assistance Program ("EAP"), which diagnosed Russell with "posttraumatic stress symptoms" requiring further evaluation. (Doc. 20-1 at 10). EAP's diagnosis fell short of diagnosing Russell with Posttraumatic Stress Disorder ("PTSD"). (Doc. 20-1 at 10).

On June 24, 2013, Russell formally requested an accommodation from City permitting him to drive only LODAL trucks instead of the Mack trucks that gave him such problems. (Doc. 24 at 2). He requested this accommodation without a formal diagnosis of PTSD. On July 10, 2013, a clinical psychologist formally diagnosed Russell as suffering from PTSD and recommended Russell not drive Mack trucks until the completion of his treatment. (Doc. 20-1 at 14). After receiving formal documentation of Russell's PTSD, City granted Russell's requested accommodation on August 7, 2013. (Doc. 24-1 at 6).

Between Russell's official accommodation request on June 24, 2013, and City's granting of the accommodation on August 7, 2013, Russell claims to have suffered "numerous mental breakdowns" requiring "necessary medical treatment." (Doc. 24 at 3).

Russell filed suit against City alleging City unreasonably delayed the approval of his accommodation request in violation of both the Americans with Disabilities Act ("ADA") and parallel provisions of the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq.* (Doc. 2).

## Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for its motion for summary judgment and "identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 411 U.S. 317, 323 (1986). The moving party meets its burden if it demonstrates "an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party to identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324.

An issue of fact is "genuine" only if a reasonable jury, after considering the evidence presented, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A factual issue is "material" if it might affect the outcome of the trial under the governing substantive law. *Id.* at 248.; *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). When ruling on a motion for summary judgment, the Court must view all inferences

to be taken from the facts in the light most favorable to the nonmoving party. *U.S. v. Diebold*, 369 U.S. 654, 655 (1962). The weighing of evidence, the determination of credibility, and the drawing of reasonable inferences from the facts are all functions of the jury, not the judge. *Anderson*, 477 U.S. at 255. Therefore, if determination of the case rests on deciding which competing version of the facts and events is true, then summary judgment is inappropriate and the case should be submitted to the jury. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

There are additional standards the Court must take into account in the case of a pro se plaintiff. Pro se filings are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 596 (1972). In addition, pro se filings are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## Discussion

### I. Reasonable Accommodation

Disability discrimination claims under the FCRA are analyzed under the same framework as ADA claims and so both sets of claims are to be considered together. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000).

To establish a prima facie case of discrimination under the ADA, Russell must show: (1) he is disabled; (2) he was a "qualified individual" at the relevant time; and (3) he was discriminated against because of his disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). An employer's failure to provide reasonable accommodation for a qualified disabled employee is discrimination under the ADA. 42 U.S.C. § 12112(b); *Lucas* 257 F.3d at 1255. An

4

accommodation is reasonable under the ADA only if it enables the employee to perform the essential functions of his or her job. *Id.* (citing *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998)). The plaintiff bears the burden of identifying and demonstrating an accommodation allows him to perform the essential functions of the job. *Id.* at 1255–56. (citing *Steward v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997); *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997)). A reasonable accommodation may take the form of a job restructuring, part-time or modified work schedules, or reassignment, among others. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii).

City moves for summary judgment based on the grounds that Russell: (1) was not "disabled" under the ADA; (2) was not qualified for his position; and (3) cannot show discrimination. (Doc. 20).

a. **Disability**

City argues in its Motion that Russell, suffering from PTSD, is not disabled under the ADA because his PTSD does not "substantially limit" his performance of the "major life function" of working. (Doc. 20 at 6–7). This argument shows a fundamental misunderstanding of the applicable law.

In support of its position, City cites several cases that have been expressly overruled by federal regulation. For example, City cites *Toyota Motor Mfg., KY., Inc. v. Williams*, 534 U.S. 184, 197 (2002), as support for the proposition that the term "substantially limited" must be "interpreted strictly to create a demanding standard." (Doc. 20 at 7). After a number of decisions were announced applying a strict interpretation standard to ADA cases, Congress passed regulations explicitly

5

instructing courts to construe "substantially limited" "broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limited' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(i). Congress goes on to specifically enumerate a non-exhaustive list of impairments that substantially limit major life activities for purposes of the ADA. *Id.* at § 1630.2(j)(iii). Posttraumatic Stress Disorder is one of those impairments. *Id.* Therefore, the Court holds that a jury could reasonably find Russell disabled under the ADA.

### b. Qualified

A "qualified individual with a disability" is one who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds . . . and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). In determining what "essential functions" of a position are, courts are to consider: (1) the employer's judgment; (2) written job descriptions; (3) the length of time spent on the job performing the function; (4) the consequences of not requiring the employee to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past employees; and/or (7) the current work experience of employees in similar jobs. 29 C.F.R. § 1630.2(n)(3)(i)–(vii).

City argues Russell was not qualified to be an Automated Collection Driver because he is unable to drive. (Doc. 20 at 9). Russell, however, *can* drive. In fact, his accommodation specifically requested assignment to LODAL trucks *so that he could*

6

*drive*. The Court therefore applies the factor test provided in 29 C.F.R. § 1630.2(n)(3).

The Automated Collection Driver job description reads: "This is skilled work involving the collection of solid waste on an assigned commercial and/or residential route utilizing an automated sanitation collection vehicle." (Doc. 20-1 at 6). Under "Minimum Requirements," the job description states a high school or vocational degree is required. (Doc. 20-1 at 7). Under "Licenses or Certificates," it states possession of a valid Florida commercial driver's license is required as well as successful demonstration of "operational skill-sets for fully automated refuse collection vehicle[s]." *Id.* City presents no evidence that Russell does not meet these requirements.

Russell was an employee of City from June 2002 to May 2015. (Doc. 29 at 1). He drove collection trucks for City for almost fifteen years. He continued driving for City even after the traumatic accident of June 2012.

The consequences of not requiring Russell to drive the Mack trucks are not high. Indeed, according to the affidavits presented, drivers regularly switched trucks. (Doc. 31 at 1). City's own employee stated in his affidavit that Russell was permitted to drive the vehicle of his choice when possible. (Doc. 20-1 at 3).

The work experience of previous employees is evidenced by the affidavit of a Mr. Emil Joseph ("Joseph"). In his affidavit, Joseph states both he and other drivers "were routinely allowed and permitted to drive and operate trucks that were not our assigned vehicle." (Doc. 31 at 1).

7

The work experience of current employees is evidenced by the affidavit of a Mr. Michael Smith ("Smith"). Smith states, in his ten years of employment by City, "I have asked and been allow[ed] by my supervisors to switch or exchang[e] my assign[ed] truck, to drive a different truck without delay or having to produce a doctor's letter." (Doc. 30).

Weighing the number of factors enumerated in 29 C.F.R. § 1630.2(n)(3), the Court finds a jury could reasonably determine Russell was qualified for the position for Automated Collection Driver.

### c. Discrimination

City also contends Russell cannot establish discrimination under the ADA because it reasonably accommodated him. (Doc. 20 at 9) City's argument does not address Russell's allegation that the City discriminated against him by unreasonably *delaying* his accommodation.

Some courts have held an unreasonable delay may amount to a failure to provide reasonable accommodation. *See, e.g., Kintz v. United Parcel Serv., Inc.*, 766 F.Supp.2d 1245, 1256–57 (M.D. Ala. 2011); *Terrell v. USAir, Inc.*, 955 F.Supp. 1448, 1454 (M.D. Fla. 1996), *aff'd*, 132 F.3d 621 (11th Cir. 1998); *Hartsfield v. Miami-Dade Cnty.*, 90 F.Supp.2d 1363, 1373 (S.D. Fla. 2000). However, even when there is some delay, a short one may permit the conclusion that the accommodation was reasonable. *See, e.g., Kintz* 766 F.Supp.2d at 1256–57 (holding a 15-day delay as reasonable); *Terrell*, 955 F.Supp. at 1454 (holding a 3-month delay as reasonable); *Hartsfield* 90 F.Supp.2d at 1373 (holding a several month delay as reasonable).

Here, Russell requested an accommodation on June 24, 2013, and on August 7, 2013, the City granted the accommodation. (Doc. 24). However, this Court cannot demand City grant accommodations without official medical documentation of impairment. Russell provided formal documentation of his PTSD diagnosis on July 10, 2013. (Doc. 29 at 2). Therefore, the true time of delay is 28 days. This Court cannot find a 28-day delay in the granting of an accommodation as unreasonable under the ADA. Employers must be given an opportunity to process requests for accommodation and institute appropriate remedial measures. Consequently, City's Motion for Summary Judgment is hereby **GRANTED** as to Russell's ADA and FCRA discrimination claims.

## II. Retaliation

To establish a prima facie case of ADA retaliation in the absence of direct evidence of discrimination, a plaintiff must show: (1) statutorily protected activity; (2) adverse employment action; and (3) causation between the protected activity and the adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to provide a legitimate non-discriminatory reason for its action that negates the inference of retaliation. *Id.* If the defendant meets its burden, the burden shifts back to the plaintiff to show the defendant's proffered non-discriminatory reason is merely pretext. *Id.*

City does not dispute Russell participated in a protected activity in requesting an ADA accommodation. The dispute arises over whether or not Russell suffered an "adverse employment action." Russell alleges that, after he requested

9

the accommodation, City refused to allow him to work in any capacity, threatened him with a written reprimand for placing tape over a speaker in one of City's trucks, and required him to sign a document stating he felt adequately prepared to perform all functions for which he was trained. (Doc. 2 at 4).

No evidence is found in the record that supports Russell's allegation that City refused to allow him to work. Indeed, the affidavit of his manager, a Mr. Mark Wilfalk, states that, not only did Russell work following his accommodation request, he even worked overtime. (Doc. 20-1 at 3). Further, a written reprimand for violation of stated employer safety policies does not rise to the level of retaliation. Similarly, requiring an employee to sign a document stating the employee is able to perform the functions of his or her job does not constitute retaliation either. Therefore, City's Motion for Summary Judgment is hereby **GRANTED** as to Russell's retaliation claim. Accordingly, it is

**ORDERED** that City's Motion for Summary Judgment is **GRANTED**. The Clerk of Court is directed to enter judgment for City and against Russell, to close this case, and terminate any pending motions.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of October, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:   All Counsel and Parties of Record